IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PAULA LARKEY,

Plaintiff,

v.                                                    Civil Action No. 5:04-CV-124

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,
                    Defendant.

## REPORT AND RECOMMENDATION
## SOCIAL SECURITY

### I. Introduction

A.     Background

Plaintiff, Paula Larkey  (Claimant), filed her Complaint on November 4, 2004, seeking

Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner

of Social Security, (Commissioner).[1]    Commissioner filed her Answer on January 31, 2005.[2]

Claimant filed her "Reply to Notice" on September 14, 2005.[3]  Commissioner filed her Motion for

Summary Judgment and Brief in Support on October 17, 2005.[4]

B.     The Pleadings

        1.     Claimant's "Reply to Notice".[5]

---

[1] Docket No. 1.

[2] Docket No. 6.

[3]  Docket No.  8.

[4] Docket No. 11.

[5] Docket No. 8.

2.        <u>Commissioner's Motion for Summary Judgment and Brief in Support</u>.[6]

C.        <u>Recommendation</u>

1.        I recommend that Claimant's Reply to Notice, which is in the nature of a Motion for Summary Judgment, be DENIED and Commissioner's Motion for Summary Judgment be GRANTED because the ALJ was substantially justified in his decision. Specifically, the ALJ (1) properly determined Claimant's RFC; (2) posed proper question to the VE; and (3) properly considered Claimant's treating and examining physicians' opinion. Additionally, Claimant's additional evidence, which was submitted with her motion, does not warrant a remand.

## II. Facts

A.        <u>Procedural History</u>

On January 31, 2003, Claimant filed an application for Supplemental Security Income (SSI) payments alleging disability since January 1, 2003.[7] The application was denied initially and on reconsideration. A hearing was held on April 26, 2004 before an ALJ. The ALJ's decision, dated June 29, 2004, denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on September 23, 2004. This action was filed and proceeded as set forth above.

B.        <u>Personal History</u>

Claimant was 41 years old on the date of the April 26, 2004 hearing before the ALJ. Claimant has a high school education and past work experience as a cook, cashier and waitress.

---

[6] Docket No. 11.

[7] Claimant previously filed an application for SSI on July 21, 2000. Her eligibility for benefits was suspended effective September 2001 and, subsequently, terminated, when she was incarcerated following conviction of marijuana possession with intent to distribute. She was paroled on January 28, 2003.

C.     Medical History

The following medical history is relevant to the time period during which the ALJ

concluded that Claimant was not under a disability: January 1, 2003–June 29, 2004.

**Disability Determination Section, 02/26/2003, Tr. 113-114**
ASSESSMENT: Psoriasis, reactive hypoglycemia due Glucophage or (illegible), according to Dr.
Nolan, consider treatment of sleep apnea

**Sleep Center, 06/07/2001, Tr. 115-116**
IMPRESSION: Mild obstructive sleep apnea syndrome with significant nocturnal desaturation.

**Ramesh Thimmiah, M.D., 02/27/2001, Tr. 119**
ASSESSMENT: Chronic generalized abdominal pain.  Probably from adhesions.  Also could
have problems related to ovarian follicles. Hypertension, Hyperlipidemia, rule out rheumatoid
arthritis.

**Christopher Kubicki, M.D., 01/31/2002, Tr. 120**
IMPRESSION: "I think the patient clearly wants narcotic medications for her pains.  Everything I
offered she took before and they never worked.  So we had a long discussion regarding why I
dislike narcotic medications for her diagnosis and we are not going to give her them."

**Christopher Kubicki, M.D., 12/29/2000, Tr. 121-122**
IMPRESSION: Chronic pains of different organs.  A lot of muscular pains.  Questionable
osteoarthritis pains of the lower and upper back and both knees due to probably degenerative
changes.  Headaches, questionable etiology.  Abdominal pains, especially the right upper
quadrant, probably related to adhesions and previous surgeries.  Obesity, getting worse.
Questionable hx of CHF and left ventricular hypertrophy.  May be related to hypertension.
Essential hypertension, questionable control.  Epigastric pain, rule out gastritis or peptic ulcer
disease or reflux.

**Greenbrier Valley Medical Center, US Transvaginal, 05/15/2002, Tr. 127**
IMPRESSION: complex left adnexal mass which appears to have increased in size when
compared to prior exam and has become predominantly cystic-complex.

**Greenbrier Valley Medical Center, US Pelvic, 04/16/2002, Tr. 128**
IMPRESSION: Left ovary mass, probably hemorrhagic cyst.

**Gabriel E. Sella, M.D. 04/11/2003, Tr. 129-138**
CONCLUSION: Ms. Larkey is a 40 year old lady.  She presents with the following positive
clinical findings: post traumatic stress disorder with depression; hypertension under control;
possible angina under control with NTG; possible history of CHF with RVH & LVH in V2 on the
EKG and appropriate medication.

**East Ohio Regional Hospital, Disability Determination, 04/01/2003, Tr. 142-143**
IMPRESSION: minimal atelectatic and/or infiltrative changes left base.

**Anthony Golas, Ph.D., 04/04/2003, Tr. 144- 151**
SUBJECTIVE SYMPTOMS: Miss Larkey presented with numerous symptoms and problems that include degenerative disc disease, rheumatoid arthritis, hypoglycemia, acid reflux, hypertriglyceridemia, congenitive heart failure, bipolar disorder, PTSD, deafness in left ear, sixty percent hearing loss in right ear, panic attacks, or diabetes.

BECK DEPRESSION INVENTORY-II- Miss Larkey's score of 40 on the BDI-II places her in the category of sever depression. This is consistent with the mental status examination and the clinical interview.

BURNS ANXIETY INVENTORY: Miss Larkey's score of 81 on the Burns places her in the category of Extreme anxiety or panic. This is consistent with the mental status examination and the clinical interview.

DSM-IV-TR DIAGNOSIS:
      AXIS I: 296.80 Bipolar Disorder NOS
              309.81 Posttraumatic Stress Disorder
                  History of alcohol dependence
      AXIS II: 301.9 Personality Disorder NOS
      AXIS III:      Cardiovascular problems, left ventricular hydrophy, mitral valve prolapse, heart palpitations, diabetes, deafness in left ear, sixty percent hearing loss in right ear, degenerative disc disease, rheumatoid arthritis, hypertriglyceridemia, acid reflux, congentive heart failure

**Physical Residual Functional Capacity Assessment, 04/15/2003, Tr. 152-159**
EXERTIONAL LIMITATIONS: occasionally lift and or carry 50 pounds, frequently lift and or carry 25 pounds, stand or walk (with normal breaks) about 6 hours in an 8-hour workday, sit (with normal breaks) about 6 hours in an 8-hour workday

**Mental Residual Functional Capacity Assessment, 04/28/2003, Tr. 160-163**
NOT SIGNIFICANTLY LIMITED: the ability to remember locations and work-like procedures, the ability to understand and remembered detailed instructions, the ability to sustain an ordinary routine without special supervision, the ability to interact appropriately with the general public, the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, the ability to travel in unfamiliar places or use public transportation, the ability to set realistic goals or make plans independently of others

MODERATELY LIMITED: the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, the ability to work in coordination with or proximity to others without being distracted by them, the ability to

complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to get along with coworkers or peers without distracting them of exhibiting behavioral extremes, the ability to respond appropriately to changes in the work setting

**Psychiatric Review Technique, 04/28/2003, Tr. 165-178**
DISORDER: Disturbance of mood, accompanied by a full or partial manic or depressive syndrome, Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes, PTSD, Personality Disorder
FUNCTIONAL LIMITATION: Mild limitation of activities of living daily, moderate limitation to difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence, or pace.

**Routine Abstract Form Mental, 09/04/2003, Tr. 179-181**
DIAGNOSIS PER DSM-IV CRITERIA: Axis I: 296.33 Major depression with psychotic features
Axis II: Borderline intellectual functioning

**Healthways Psychiatric Evaluation, 06/10/2003, Tr. 184-185**
DIAGNOSTIC IMPRESSION: AXIS I: Dysthymia and Depressive Disorder NOS
AXIS II: Rule out Dependant Paranoid Personality Disorder
AXIS III: Chronic Abdominal Pain
AXIS IV: Psychosocial Stressors: Moderate to Severe
AVIS V: Current Level of Functioning: about 40 to 50

**Healthways Individual Program Plan, 04/25/2003, Tr. 186-188**
ASSESSMENT: Based on the mental status exam and commenting(?) Form client is experiencing difficulties of feelings of depression, can't sleep, appetite is poor at times, tearfulness, low energy level, and lack of internalized thinking/insight as well as decision making.

**Healthways, The Initial I.D.T. Review (Code #26A), 03/04/2003, Tr. 190**
DIAGNOSIS: AXIS I: Major Depression Severe and Psychotic Features, Alcohol ? by hx,? abuse
AXIS II: R/O personality disorder
AXIS III: Congestive Heart Failure, hypoglycemia
AXIS IV: No support system, no job, lost SSI in prison, no insurance, on parole following prison sentence
AXIS V: Global Assessment on functioning scale- 50

**Healthways, Inc. Initial Evaluation, 02/25/2003, Tr. 192-196**
FUNCTIONAL AND ASSESSMENT SUMMARY: Self care- no dysfunction, activities of community living- no dysfunction, social, interpersonal and Family- moderate (isolate self, withdrawn, no going out), concentration and task performance- moderate (poor concentration, remembering, frequent rests when involved in physical activity), Mal adaptive, dangerous, and impulsive behaviors- no dysfunction

**Request for Psychiatric Consultation/Evaluation, 02/25/03, Tr. 197-203**
IMPRESSION: depression, guilt, ?, worthlessness, helplessness, ?, feelings of apathy, low energy, withdrawn, easily distracted, inability to sleep, loss of interest, poor concentration
DIAGNOSIS: AXIS I: Major depression without psychotic features
        AXIS III: congestive heart failure, hypoglycemia, hernias
        AXIS IV: No support system, no job, lost SSI in prison, no insurance, on parole for one year
        AXIS V: Global Assessment on functioning scale- 50

**Adult MH/SA Functional Assessment Instrument, 02/25/2003, Tr. 206-211**
MODERATE DYSFUNCTIONAL: social, interpersonal, and family, Concentration and task performance

**Healthways, 08/28/2000, Tr. 214-215**
DIAGNOSIS: AXIS I: Major depression recurrent with psychotic features, alcohol dependence in complete remission
        AXIS II: Borderline intellectual functioning
        AXIS III: Recurring back pain
        AXIS IV: Psychosocial stressors: moderate to severe
        AVIS V: Current level of functioning about 40-50; Past year about 50

**Mental Residual Functional Capacity Assessment, 10/16/2003, Tr. 219-222**
NOT SIGNIFICANTLY LIMITED: the ability to remember locations and work-like procedures, the ability to sustain an ordinary routine without special supervision, the ability to interact appropriately with the general public, the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, the ability to respond appropriately to changes in the work setting, the ability to be aware of normal hazards and take appropriate precautions, the ability to travel in unfamiliar places or use public transportation, the ability to set realistic goals or make plans independently of others

MODERATELY LIMITED: the ability to understand and remembered detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, the ability to work in coordination with or proximity to others without being distracted by them, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to get along with coworkers or peers without distracting them of exhibiting behavioral extremes

**Psychiatric Review Technique, 10/16/2003, Tr. 223-236**
DISORDER: Major depression with psychotic features, Bipolar D/O NOS, PTSD, Personality D/O, NOS
FUNCTIONAL LIMITATION: Mild limitation of activities of living daily, moderate limitation

to difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence, or pace.

**Physical Residual Functional Capacity Assessment, 10/17/203, Tr. 237-244**
EXERTIONAL LIMITATIONS: occasionally lift and or carry 50 pounds, frequently lift and or carry 25 pounds, stand or walk (with normal breaks) about 6 hours in an 8-hour workday, sit (with normal breaks) about 6 hours in an 8-hour workday

POSTURAL LIMITATIONS: none established.
MANIPULATIVE LIMITATIONS: none established
VISUAL LIMITATIONS: none established
COMMUNICATIVE LIMITATIONS: none established
ENVIRONMENTAL LIMITATIONS: none established

**Healthways, Consent for disclosure information, 09/15/2003, Tr. 247-250**
DIAGNOSIS PER DSM-IV CRITERIA: AXIS I: Major depression with psychotic features
AXIS II: Borderline intellectual functioning

**Healthways Psychiatric Evaluation, 07/10/2003, Tr. 252-253**
DIAGNOSTIC IMPRESSION: AXIS I: Dysthymia and Depressive Disorder NOS
AXIS II: Rule out Dependant Paranoid Personality Disorder
AXIS III: Chronic Abdominal Pain
AXIS IV: Psychosocial Stressors: Moderate to Severe
AVIS V: Current Level of Functioning: about 40 to 50

**Healthways, The Initial I.D.T. Review (Code #26A), 03/04/2003, Tr. 254**
DIAGNOSIS: AXIS I: Major Depression Severe and Psychotic Features, Alcohol ? by hx,? abuse
AXIS II: R/O personality disorder
AXIS III: Congestive Heart Failure, hypoglycemia
AXIS IV: No support system, no job, lost SSI in prison, no insurance, on parole
following prison sentence
AXIS V: Global Assessment on functioning scale- 50

**Healthways, Psychiatric Note, 01/29/2004, Tr. 255**
ASSESSMENT: Patient is doing better overall.

**Healthways, Psychiatric Note,12/18/2003, Tr. 257**
ASSESSMENT: Patient is at her baseline except for some mild insomnia.

**Progress Note, Addictions Counseling, 06/16/2003, Tr. 258**
OUTCOME: The client was released from the APS 10-session addictions recovery assistance program for successfully meeting the program requirements.

**Progress Note, Addictions Counseling, 05/05/2003, Tr. 259**

OUTCOME: The client checked off all personally relevant triggers to relapse on a checklist of typical relapse triggers. The client stated a strategy for dealing effectively with each relapse trigger.

**Progress Note, Addictions Counseling, 04/21/2003, Tr. 260**
OUTCOME: The client realized any impediments to a strong recovery program are rationalizations that prevent recovery from the addiction and that someone who is serious about recovery does not use excuses, they just get the job done by doing whatever it takes to recover.

**Progress Note, Addictions Counseling, 04/07/2003, Tr. 261**
OUTCOME: The client demonstrated an understanding of the importance of 12-step programs by paraphrasing back to the counselor what a strong 12-step recovery program consists of and made a list of how social relationships and activities must change in order to support recovery.

**Progress Note, Addictions Counseling, 03/17/2003, Tr. 262**
OUTCOME: The client demonstrated an understanding of the disease model of addictions by paraphrasing the concept back to the counselor.

**Progress Note, Addictions Counseling, 03/03/2003, Tr. 266**
OUTCOME: The client signed the Abstince Contract and Treatment Plan.

**Progress Note, Addictions Counseling, 02/24/2003, Tr. 267**
OUTCOME: The client's records and responses to the addictions assessment interview indicate that there is inclusive evidence of an addictions problem. It is more likely substance abuse/early addiction.

**Progress Note, Addictions Counseling, 02/10/2003, Tr. 268**
OUTCOME: The client expressed an understanding of what the APS addictions counseling program consists of and what is expected in order to successfully complete the program.

**Healthways, Psychiatric Note, 03/15/2004, Tr. 271**
ASSESSMENT: Patient has dysthymia and Personality Disorder with Dependent Passive-Aggressive Traits.

D.      Testimonial Evidence

1. Claimant

Testimony was taken at the hearing from Claimant, who testified as follows (Tr. 283-307):

Q       Okay.  The - - now, as far as your - - you said you're depressed.  Now, what does

that mean, does that mean you're sad all the time?

A    Just a lot of memories and stuff that I just can't get my mind clear of. The doctors have said that I have a lot of guilt but I'm not guilty but I make myself guilty for something I'm not guilty of.

Q    And does, does this depression affect you physically at all?

A    Yeah, sleep wise, I have chronic insomnia, I can't sleep.

Q    Okay. And that - - what about your thoughts, do you - - are you thinking normally, do you think?

A    No. Well, absent minded, I don't know what they - - I'll go to do something and then I'll forget what I'm doing.

Q    Do you have racing thoughts?

A    Yes, racing flashbacks, racing thoughts constantly.

Q    Okay. Now, do you have difficulty - - do you do any reading?

A    No, I can't concentrate on reading. I don't remember what I read.

Q    What about watching movies on television, do you do that?

A    No, I've never finished a movie because I can watch it and not even know what I watched in the end.

Q    Okay.

A    And there are a lot of times a movie will remind me of something that has happened in my life and I just can't do it.

*          *          *

Q    And is this - - why do you think you gained this weight?

A    I don't have the energy just to run it off, I'm always tired.

Q       And do you exercise or walk or anything?

A       No, I want to but just never do it.

                    *               *               *

Q       And when you - - when these flashbacks hit you how does that affect you?

A       It makes me shake and I get tearful because I hold it against myself because I couldn't help him.

Q       And how often does this happen, these flashbacks?

A       Every day.

                    *               *               *

Q       Okay.  Have you ever heard things?

A       Yes.

Q       What have you heard?  I mean, heard things that other people didn't hear I'm talking about?

A       Right.

Q       Like what do you hear?

A       Like when I describe it to the doctor it's almost like being psychic.  The voice tells me if something is going to happen or someone is going to pass away or there's going to be a car accident, things like that.

Q       Okay.  And you - - and do you hear someone telling you that in your head you said?

A       Yes, uh-huh.

Q       Okay.  Now, do you - - does that happen very often?

A        Yes, on and off and it can go on for months and then all at once quit for a couple months and then it comes back.

                    *                    *                    *

Q        Okay.

A        He says it's hallucinations but it feels like almost being like a psychic, it tells me things.

Q        Okay.  But the doctor, you're saying the doctor told you it was hallucinations?

A        Right, Dr. Kolly.

Q        Okay.  Now, do you ever have - - have you ever had thoughts of committing suicide?

A        Yes.

Q        Now, has that been - - is that just recent or has that been going on awhile?

A        It has been going on all my life.

Q        Okay.  And how often do you have those thoughts?

A        Oh, every couple months probably.

Q        Every couple months.  Have you ever tried to follow through on that and actually make an attempt to commit suicide?

A        No.  I thought about it for - - I believe in the Bible, I don't believe in it but I do feel like it.

Q        Okay.  Now, let's talk about your sleep.  You indicated you had chronic insomnia, you couldn't sleep at night.

A        Right.

Q      Do you have anything else wrong with you that interferes with your sleep at night?

A      What do you mean?

Q      Do you have sleep apnea?

A      Yeah, I have sleep apnea.

Q      Now, what - -

A      Because my heart - - Dr. John (Phonetic) had actually said that my heart stops and I gasp and wake up to get air.

Q      You can't breathe and you wake up?

A      Right.

Q      Okay.  And how many times - - does that happen every night?

A      Yes.

Q      Okay.  How often does it happen approximately?

A      Sometimes two, three times a night.  I have to sleep with two pillows.  I have to sit in an upright position.

Q      So how many hours of sleep would you estimate you have a night?

A      Approximately two hours a night.

                    *                    *                    *

Q      Okay.  Now, let me get back to sleep.  Does lack of sleep make you irritable?

A      Yes.

Q      Does it affect your concentration?

A      Yes.

Q      Okay.  The - - by affecting your concentration, I mean, you can't read steadily or

you can't watch television steadily?

A     Right.  I don't understand sometimes what I read.  I could read it but I don't understand what I just read.

Q     What about when other people are talking to you and tell you something, can you concentrate on what they're saying?

A     Not all the times because sometimes it just don't matter to me.

                    *                    *                    *

Q     Okay.  Now, the record indicates you have a problem with hypoglycemia, that's low blood sugar, right?

A     Right.

Q     How does that affect you?

A     That puts me down.

Q     Now, what do you have - - what do you mean when it puts you down?  Do you mean - - all of a sudden you get very tired?

A     Right, my whole body just shakes and I have to grab something to eat and then after I eat, I just, I have to just go lay down.  I don't care where I'm at, if I'm in the car I have to go to sleep just pull over and go to sleep for a little while instead of wrecking.

                    *                    *                    *

Q     Okay.  Can you do things fairly fast, I mean, like, you know, if you're washing dishes can you do that fairly fast?

A     No.

## 2. <u>Vocational Expert</u>

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr. 307-310):

Q        Would you please describe Ms. Larkey's past work?

A        Yes, Your Honor, in 1993 she worked as a cook on a part-time basis, that work would be medium and skilled.  In 1989 she worked as a cashier, that would be light and semi-skilled.  And she worked as a waitress at a Moose club part-time, that would be light and unskilled.

Q        Okay.  Please assume a younger individual with a high school education precluded from performing all but light work that entails no hazards, no climbing, no temperature extremes, that is unskilled and low stress, defined as one and two step processes, routine and repetitive tasks primarily working with things rather than people, entry level.  With those limitations, sir, can you describe any work this hypothetical individual can perform?

A        Yes, Your Honor, and I'll define the local economy as Wheeling, Bridgeport metropolitan statistical area which covers Belmont County and (INAUDIBLE) counties in West Virginia.  There would be the work of a housekeeping cleaner and in the local economy there are 204 jobs, in the national economy 490,075 jobs.  There would be the work of a mail clerk, and that would be working in private industry as opposed to working for the postal service.  There would be 35 jobs in the local economy and 79,258 jobs in the national economy.  There would be the work of a sewing machine operator, in the local economy there are 47 jobs, in the national economy 114,248 jobs.

Q        Are those jobs consistent with the DOT?

A        Yes, Your Honor.

Q        Mr. Ostrowski, if the claimant's concentration, which Dr. Kolly at least in 9/03 in Exhibit B14 described as moderately deficient, if I define that as meaning inability to stay on task one third to two thirds of the day, if her concentration is impacted to that extent are those jobs affected?

A        Yes, Your Honor, there would be no jobs.

Q        Okay.  What is a tolerable limit of absenteeism in the unskilled jobs you named, Dr. Ostrowski?

A        In my experience if an individual misses more than two days per month it would eventually preclude employment.

E.        Lifestyle Evidence

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records.  The information is included in the report to demonstrate how the Claimant's alleged impairments affect her daily life.

•        Smokes.  (Tr. 289).

•        Has a driver's license. (Tr. 290).

•        Typically drives seven to nine miles. (Tr. 290).

•        Stopped drinking in 1994.  (Tr. 291).

•        Takes two to three naps during the day.  (Tr. 296).

•        Goes into the wood, sits and watches animals.  (Tr. 305).

### III.  The Motions for Summary Judgment

A.        Contentions of the Parties

Claimant is a pro se litigant.  Her "Reply to Notice," filed on September 14, 2005, consists

of the following documents: (1) Claimant's letter, dated September 13, 2005; (2) Routine Abstract Form, dated September 15, 2003 and completed by Dr. Kolli; (3) Mental Impairments Questionnaire (RFC & Listings), dated August 26, 2004; and (4) a copy of Dr. Kolli's letter, dated September 1, 2005. In her letter, Claimant contends that the social security doctors and Dr. Kolli have determined that she is "totally disabled." Additionally, Claimant alleges that the Vocational Expert supported her inability to perform all work.

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that (1) the ALJ properly determined Claimant's RFC; (2) the VE's testimony provided substantial evidence to support the ALJ's decision at step five of the sequential analysis; (3) the ALJ relied on the hypothetical question that considered all of Claimant's credible impairments; and (4) the additional evidence annexed to Claimant's "Reply to Notice" is not "new" or "material" and would not have changed the ALJ's decision.

B.    The Standards.

1.    Summary Judgment. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2. <u>Judicial Review</u>. Only a final determination of the Commissioner may receive judicial review. <u>See</u>, 42 U.S.C. §405(g), (h); <u>Adams v. Heckler</u>, 799 F.2d 131,133 (4th Cir. 1986).

3. <u>Social Security - Medically Determinable Impairment - Burden</u>. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460 (1983).

4. <u>Social Security - Medically Determinable Impairment</u>. The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); <u>Throckmorton v. U.S. Dep't of Health and Human Servs.</u>, 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

5. <u>Disability Prior to Expiration of Insured Status- Burden</u>. In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status. <u>Highland v. Apfel</u>, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); <u>Stephens v. Shalala</u>, 46 F.3d 37, 39 (8th Cir.1995)).

6. <u>Social Security - Standard of Review</u>. It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

7. <u>Social Security - Scope of Review - Weight Given to Relevant Evidence</u>. The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained

his rationale in crediting certain evidence in conducting the "substantial evidence inquiry." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

8. Social Security - Substantial Evidence - Defined. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9. Social Security - Sequential Analysis. To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy. Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

10. Evidence - Weight. The ALJ is required to indicate the weight given to all relevant evidence. Gordon v. Schweiker, 725 F.2d 231 (4th Cir. 1984). However, the ALJ is not required to discuss every piece of evidence. Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995).

11. Social Security - Treating Physician - Opinion that Claimant is Disabled. An opinion that a claimant is disabled is not a medical opinion within the definition of 20 C.F.R. §§ 404.1527,

416.927. A statement by a medical source that Claimant is disabled or unable to work does not mean that the Commissioner will determine that Claimant is disabled. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). The Commissioner is responsible for making the determination whether a claimant meets the statutory definition of disability. Id. No special significance will be given to the source of an opinion on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(3), 416.927(e)(3).

12. Social Security - Treating Physician - Controlling Weight - The opinion of a treating physician will be given controlling weight if the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and 2) not inconsistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2). See also Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984); Heckler v. Campbell, 461 U.S. 458, 461 (1983); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990).

13. Social Security - Treating Physician - Speculative Opinion. An ALJ is not bound to accept the opinion of a treating physician which is speculative and inconclusive. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

14. Social Security - Treating Physician - Not Entitled to Controlling Weight. When not entitled to controlling weight, the medical opinion of a treating physician is still entitled to deference and must be weighed according to the following five factors: 1) length of the treatment relationship and frequency of examinations, 2) nature and extent of the treatment relationship, 3) supportability, 4) consistency, and 5) specialization. 20 C.F.R. §§ 404.1527(d), 416927(d). When benefits are denied, the ALJ must give good reasons in the notice of decision for the weight given to a treating source's medical opinion(s). 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

15. Social Security - Claimant's Credibility - Pain Analysis. The determination of

19

whether a person is disabled by pain or other symptoms is a two step process. First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged. Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

16. Social Security - Vocational Expert - Hypothetical. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record and it must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). The ALJ is afforded "great latitude in posing hypothetical questions," Koonce v. Apfel, No. 98-1144, 1999 WL 7864, at *5 (4th Cir. Jan.11, 1999)[8], and need only pose those that are based on substantial evidence and accurately reflect the plaintiff's limitations. Copeland v. Bowen, 861 F.2d 536, 540-41 (9th Cir. 1988).

17. Social Security - Sequential Analysis - Step Five - Burden of Proof. At Step Five of the sequential analysis, if the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. 20 C.F.R. §§ 404.1520, 416.920; Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

18. Social Security - New Evidence - Power to Remand. The Court may remand a case to the Commissioner "only upon a showing that there is new evidence, which is material and that

---

[8] This Court recognizes that the United States Court of Appeals for the Fourth Circuit disfavors citation to unpublished opinions. I recognize the reasons for that position and acknowledge it. Unfortunately, there is not a better indicator of what its decision might be in this regard.

there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); Borders v. Heckler, 777 F.2d 954 (4th Cir. 1985).

     19.    Social Security - New Evidence -Remand - Burden on Claimant. "A claimant seeking remand on the basis of new evidence under 42 U.S.C. § 405(g) must show that the evidence is new and material and must establish good cause for failing to present the evidence earlier. Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (en banc).

C.    Discussion

1.  Step Five of Sequential Analysis

     Pursuant to the five-step inquiry employed by administrative law judges to determine whether a claimant is disabled within the meaning of the Social Security Act, the claimant bears the burden of proof through the first four steps, and the Commissioner bears the burden of proof at the final step. McLain v. Schweiker, 715 F.2d 866 (4th Cir. 1993). In this case, the administrative law judge determined that Claimant carried her burden of proof through the first four steps and demonstrated that she was unable to perform any of her past relevant work pursuant to 20 C.F.R. § 404.1565. To prevail at step five, the Commissioner must identify a significant number of jobs in the economy that accommodate Claimant's residual functional capacity and take into account vocational factors such as her age, education, and skills. McLamore v. Weinberger, 538 F.2d 572 (4th Cir. 1976). Thus, this Court's inquiry is limited to whether substantial evidence supports the administrative law judge's determination at step five of the inquiry--specifically, whether substantial evidence supports the ALJ's findings of Claimant's residual functioning capacity and the availability of jobs in significant numbers that accommodate her limitations.

21

A RFC is what Claimant can still do despite her limitations. §§ 404.1545, 416.945. Residual Functional Capacity is an assessment based upon all of the relevant evidence. Id. It may include descriptions of limitations that go beyond the symptoms, such as pain, that are important in the diagnosis and treatment of Claimant's medical condition. Id. Observations by treating physicians, psychologists, family, neighbors, friends, or other persons, of Claimant's limitations may be used. Id. These descriptions and observations must be considered along with medical records to assist the SSA to decide to what extent an impairment keeps a Claimant from performing particular work activities. Id. This assessment is not a decision on whether a Claimant is disabled, but is used as the basis for determining the particular types of work a Clamant may be able to do despite their impairments. Id. Light work is defined in the regulations as: "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

It is the duty of the ALJ to resolve conflicts in the evidence; whereas, it is the duty of this Court to determine whether the Commissioner's findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). In assessing whether there is substantial evidence, the Court should not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).

In this case, the ALJ made a RFC determination based on several factors, including Claimant's testimony, reports of treating and consulting physicians and his comprehensive review of the medical evidence of record. (Tr. 16-27). From weighing this evidence, the ALJ

22

determined that Claimant retained the RFC to perform "the demands of light work with certain modifications. She can perform no climbing and must avoid exposure to hazards and temperature extremes. She is limited to unskilled, low stress, entry-level work that involves on to two-step work processes and routine, repetitive tasks, primarily working with things rather than people." (Tr. 24). It should be noted that, although the State agency medical consultants found that Claimant was capable of performing a range of medium work, the ALJ found that this assessment was not supportable. Accordingly, the ALJ resolved "all doubts in the claimant's favor in finding that despite her physical impairments she can perform the range of light work." (Tr. 23).

Additionally, the ALJ did not find Claimant to be entirely credible. The ALJ noted that at the hearing, Claimant testified that she was experiencing ongoing problems with flashbacks, chronic insomnia and hallucinations. The ALJ noted, however, that Dr. Kolli's treatment notes within less than twelve months of the alleged onset date contain no reference to these alleged symptoms. (Tr. 23). The ALJ noted that, to the contrary, on December 18, 2003, Dr. Kolli reported that Claimant was "at her baseline except for some mild insomnia." (Tr. 23). Additionally, on January 29, 2004, Dr. Kolli reported that Claimant "showed no significant evidence of anxiety or depression and that overall she was doing better." (Tr. 23). The ALJ further noted that Dr. Kolli's latest note indicated that Claimant had "some situational depression related to problems dealing with her family." (Tr. 23). Dr. Kolli also noted Claimant's "low self-esteem and opined that she was unable to function in any occupation that required sustained social interactions and working with other people." (Tr. 23).

The ALJ also noted that Claimant has given an inconsistent testimony with regard to her sleep apnea, complaining only of problems with this condition while sleeping at night but not

while napping during the day. She also failed to document any treatment for this condition after it was diagnosed on June 11, 2001. (Tr. 23).

With respect to Claimant's mental non-exertional limitations, the ALJ found that Claimant has moderate limitations with no episodes of decompression when evaluating the step three listing requirements. (Tr. 20-22). The ALJ's finding is consistent with the State agency psychological consultant who found that Claimant retained "the mental-emotional capacity to learn and perform routine work-like activities in a low-pressure setting that requires little social interaction." (Tr. 23-24). The ALJ also considered Dr. Kolli's report, dated July 23, 2002, in which Dr. Kolli opined that Claimant should receive benefits because of her severe functional and social impairments, and noted that "this opinion was rendered only six months after the claimants' alleged onset date...." (Tr. 24). In his latest report, dated March 15, 2004, Dr. Kolli only precluded Claimant from jobs requiring sustained social interaction and working with other people. (Tr. 24). The ALJ noted that this limitation "has been accepted in [his] assessment of the claimant's residual functional capacity." (Tr. 24).

This Court cannot say that, in light of the evidence of record and the evidence outlined in the ALJ's decision, there was not substantial evidence for the ALJ's determination of Claimant's RFC.

The next question is whether the hypothetical question properly set forth all the relevant evidence of record concerning Claimant's impairments. Since a VE's opinion, in order to be relevant, must be one that is based on all evidence in the record, it is necessary for the VE to be given a proper hypothetical upon which he can make a response. The opinion must be based on the Claimant's condition as shown by the entire record, and it must be in response to proper

hypothetical questions which fairly set out all of claimant's impairments. <u>Walker v. Bowen</u>, 889 F.2d 47, 50-51 (4th Cir. 1989). Moreover, the ALJ needs only pose those hypothetical questions that are based on substantial evidence and accurately reflect the claimant's limitations. <u>Copeland v. Bowen</u>, 861 F.2d 536, 540-541 (9th Cir. 1988). An ALJ is free to accept or reject restrictions included in hypothetical questions suggested by a claimant's counsel, even though these considerations are more restrictive than those suggested by the ALJ. <u>France v. Apfel</u>, 87 F. Supp. 2d 484, 490 (D. Md. 2000) (citing <u>Martinez v. Heckler</u>, 807 F.2d 771, 774 (9th Cir. 1986)).

In this case, the ALJ found the Claimant capable of performing the demands of light work with certain modifications. "For a vocational expert's opinion to be relevant, it must be in response to a proper hypothetical question that sets forth all of the claimant's impairments. The ALJ, however, has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." <u>Koonce v. Apfel</u>, No. 98-1144, 1999 WL 7864, at *5 (4th Cir. Jan.11, 1999).[9] In his hypothetical, the ALJ presented a hypothetical question that included all of Claimant's credible limitations. As previously discussed, the ALJ properly discounted the credibility of the Claimant's subjective allegations in light of the entire record. The ALJ then concluded that the Claimant could perform light work activities with certain modifications after taking into account the Claimant's impairments.

It should be noted that Claimant herein does not challenge the hypothetical question posed

---

[9] This Court recognizes that the United States Court of Appeals for the Fourth Circuit disfavors citation to unpublished opinions. I recognize the reasons for that position and acknowledge it. Unfortunately, there is not a better indicator of what its decision might be in this regard.

to the VE.   As was stated above, in reviewing the ALJ's decision, the Court cannot re-weigh

evidence, resolve conflicts in the record, decide questions of credibility or substitute our own

judgment fo that of the Commissioner.  Hays, 907 F.2d at 1456.  See also Mastro v. Apfel, 270

F.3d 171, 176 (4th Cir. 2001).  The ALJ properly found, based on the VE's testimony, that

Claimant could perform a number of jobs in the national economy.   (Tr. 26).  Therefore, the ALJ

met his burden at Step Five of the sequential analysis.

## 2.  Additional Evidence

Claimant has submitted to the Court the following documents: (1) Routine Abstract Form,

dated September 15, 2003 and completed by Dr. Kolli; (2) Mental Impairments Questionnaire

(RFC & Listings), dated August 26, 2004; and (3) a copy of Dr. Kolli's letter, dated September 1,

2005.  Commissioner argues that the case should not be remanded based on this additional

evidence because it is not "new" within the meaning of 42 U.S.C. § 405(g).

It has long been settled that "[r]eviewing courts are restricted to the administrative record

in performing their limited function of determining whether the Secretary's decision is supported

by substantial evidence."  Wilkins v. Secretary, DDHS, 953 F.2d 93, 96 (4th Cir. 1991)(en

banc)(quoting Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972)(reviewing courts are

restricted to administrative record in determining whether Commissioner's decision is supported

by substantial evidence)).  But when the evidence is submitted on judicial review which indicates

that the Commissioner's "decision might be reasonably have been different," had he reviewed it

as well, we should remand for reconsideration.  King v. Califano, 599 F.2d 597, 599 (4th Cir.

1979).

The Court may remand a social security case on the basis of newly discovered evidence, a

"sentence six" remand, when the claimant satisfies four prerequisites. 42 U.S.C.A. § 405(g) (2003); Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). First, the evidence must be "new." Borders, 777 F.2d at 955 (holding "new" evidence is "relevant to the determination of disability at the time the application was first filed and not merely cumulative") (quoting Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983))). Second, it must be material. Id. Third, there must be good cause for the "failure to submit the evidence when the claim was before the Secretary." Id. Fourth, the claimant must make "'at least a general showing of the nature' of the new evidence." Id. (quoting King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)). Evidence is not "new" if other evidence specifically addresses the issue. Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id.

Although the Commissioner considers opinions from treating and examining medical sources on the issue of a claimant's residual functional capacity, the final responsibility for deciding this issue is reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2)(2004). The opinion of a treating physician will be given controlling weight if the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and 2) not inconsistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2). While the credibility of the opinions of the treating physician is entitled to great weight, it will be disregarded if there is persuasive contradictory evidence. Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984). To decide whether the impairment is adequately supported by medical evidence, the Social Security Act requires that impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); Heckler v. Campbell, 461 U.S. 458,

461 (1983); 20 C.F.R. § § 404.1508; <u>Throckmorton v.  U.S. Dep't of  Health and Human Servs.</u>, 932 F.2d 295, 297 n.1 (4th Cir.  1990).

In the instant case, the ALJ considered the September 2003 Routine Abstract Form, completed by Dr. Kolli and noted that, "although Dr. Kolli reported a diagnosis of borderline intellectual functioning on September 15, 2003 (Exhibit B-9f), the reports from the treating source include no I.Q. test results to support this diagnosis."  (Tr. 20).  That satisfies the first prong of 20 C.F.R. § 416.927(d)(2).  The ALJ also noted that Dr. Kolli's opinion was inconsistent with other substantial evidence in the record.  The ALJ noted that on July 10, 2003, Dr. Kolli reported that "the claimant was probably of average intelligence."  (Tr. 20).  Additionally, the ALJ noted that Claimant "reported to the consultative evaluator that she completed high school and denied having any special class placement."  (Tr. 20).  The ALJ further noted that on September 15, 2003, Dr. Kolli reported that "the claimant's social functioning was moderately deficit to severely deficient and that the claimant was isolating herself."  (Tr. 21).  However, on January 29, 2004 and March 15, 2004, Dr. Kolli reported improvement in Claimant's condition. (Tr. 21).   Finally, the ALJ considered Dr. Kolli's opinion that Claimant's concentration, task persistence and pace were moderately deficient.  (R. 21).  "Resolving all doubts in the claimant's favor," the ALJ found that she had a moderated impairment in this area related to her mental impairments.  (Tr. 22).  The substantial evidence in the record is inconsistent with Dr. Kolli's opinion and satisfies the second prong of 20 C.F.R. § 416.927(d)(2).  Accordingly, this opinion was not given controlling weight.  Therefore, the ALJ did not err when he did not give controlling weight to the September 2003 Routine Abstract Form completed by Dr. Kolli.

Claimant also submits Mental Impairments Questionnaire (RFC & Listings), dated August

26, 2004. According to the record, the Questionnaire was submitted to the Appeals Council for review on September 10, 2004. (Tr. 272). On September 23, 2004, the Appeals Council issued an order stating that it had received the additional evidence and that it incorporated that additional evidence into the administrative record. (Tr. 8). The Appeals Council must consider evidence submitted with a request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991)(en banc)(quoting Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)); see also 20 C.F.R. §§ 404.970(b), 416.1470(b). By incorporating this evidence into the record and considering it upon request for review, the Appeals Council determined that this evidence was both new and material, and related to the period on or before the date of the ALJ's decision. See 20 C.F.R. §§ 404.970(b), 416.1470(b). On September 23, 3004, the Appeals Council declined Claimant's request for review. (Tr. 5). In its decision, the Appeals Council concisely stated that it had considered the entire record, including the additional evidence, and did not find cause to disturb the ALJ's decision.[10] Therefore, because Claimant's Mental Impairments Questionnaire (RFC & Listings), dated August 26, 2004, is not "new" within the meaning of 42 U.S.C. § 405(g), this evidence does not require a remand.

Finally, the District Court's role is to review "the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily

---

[10]  The Appeals Council stated that the Appeals Council "considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision"  (Tr. 5-6).

prior to the date of the ALJ's decision." <u>Wilson v. Apfel</u>, 179 F.3d 1276, 1279 (11th cir. 1999).

Because the Court is confined to reviewing the record, we cannot review any evidence not

contained in the record as reviewed by the ALJ in determining whether substantial evidence

supports the ALJ's findings.  The ALJ's decision is dated June 29, 2004.  (Tr. 27).  Dr. Kolli's

opinion was rendered on September 1, 2005.  Dr. Kolli's opinion was made after the relevant time

period and, therefore, does not warrant a remand.

Therefore, because Claimant's additional evidence is not "new" within the meaning of 42

U.S.C. § 405(g),  this evidence does not require a remand.

   3.  <u>The ALJ Failed to Properly Consider the Opinions of Dr. Kolli and State Agency Experts</u>

Claimant asserts that the ALJ improperly evaluated the opinion of Dr. Kolli, Claimant's

treating physician, and the State agency Experts.  Commissioner counters that the ALJ gave

proper weight  to Dr. Kolli and State agency experts' opinions.

It is the duty of the ALJ, not the courts, to make findings of fact and resolve conflicts in

the evidence.  <u>Hays v. Sullivan</u>, 907 F.2d at 1456.  The scope of review is limited to determining

whether the findings of the Commissioner are supported by substantial evidence and whether the

correct law was applied, not to substitute the Court's judgment for that of the Commissioner.  <u>Id</u>.

The opinion of a treating physician will be given controlling weight if the opinion is 1) well-

supported by medically acceptable clinical and laboratory diagnostic techniques and 2) not

inconsistent with other substantial evidence in the case record.  20 C.F.R. § 416.927(d)(2).  <u>See</u>

<u>also</u>,  <u>Evans v. Heckler</u>, 734 F.2d 1012 (4th Cir. 1984); <u>Heckler v. Campbell</u>, 461 U.S. 458, 461

(1983); <u>Throckmorton v. U.S. Dep't of Health and Human Servs.</u>, 932 F.2d 295, 297 n.1 (4th Cir.

1990).  Additionally, it is well established that an ALJ may rely on the opinions of non-examining

physicians, even when those opinions contradict the opinion of a treating physician, if the opinions are consistent with the record.  Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).

In the instant case, the ALJ's decision is supported by the substantial evidence.  Both Dr. Kolli and the State agency experts opined that Claimant had only moderate limitations in seven areas of mental functioning.  (Tr. 160-161).  Additionally, the ALJ's decision is more restrictive, than the state agency experts opinion that Claimant could perform medium exertional level activities.  (Tr. 23).  Although the ALJ is required to indicate the weight given to all relevant evidence,  Gordon v. Schweiker, 725 F.2d 231 (4th Cir. 1984), the Fourth Circuit does not require that the ALJ discuss every piece of evidence.[11]  Therefore, this Court must examine the record to determine whether there is substantial evidence for the ALJ's decision.

After reviewing the record, the Undersigned finds that the ALJ properly analyzed and evaluated the medical evidence of record and has sufficiently articulated his assessment of the evidence.  Therefore, the ALJ's  finding was supported by substantial evidence.

## IV.  Recommendation

For the foregoing reasons, I recommend that Claimant's Reply to Notice, which is in the nature of a Motion for Summary Judgment, be DENIED and Commissioner's Motion for Summary Judgment be GRANTED because the ALJ was substantially justified in his decision.

---

[11]  The Undersigned notes that the Seventh Circuit has held that a written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence.  See Green V. Shalala, 51 F.3d 96, 101 (7th Cir.1995).  Also, the Eighth Circuit has held that the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it.  Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998).  See also, Walker v. Secretary of Health and Human Services, 884 F.2d 241, 245 (6th Cir.1989)(reviewing court many examine all the evidence, even if it has not been cited in the Secretary's decision).

Specifically, the ALJ (1) properly determined Claimant's RFC; (2) posed proper question to the VE; and (3) properly considered Claimant's treating and examining physicians' opinion. Finally, Claimant's additional evidence, which was submitted with her motion, does not warrant a remand.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the Unites States District Court for the Norther District of West Virginia.

DATED: January 5, 2006

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE